**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

WAAD SALAM ALKHAFAJI,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No.:  3:26-cv-02262-RBM-BJW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Docs. 1, 15, 16]**

Before the Court is Petitioner Waad Salam Alkhafaji's ("Petitioner") Third Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. 19.)  For the reasons set forth below, the Court **GRANTS** the Petition.

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a citizen of Iraq who came to the United States as a two-year old refugee with his family. (Doc. 19 at 2.)  On or about March 3, 1993, Petitioner was issued an I-94 Visa and classified as "Refugee – Not Adjusted to Lawful Permanent Resident Status." (Doc. 20 at 2.)  On August 18, 1993, Petitioner's status changed to "adjusted child of a refugee" with an expiration date of December 3, 2019.  (*Id.*)

1

In the last several years, Petitioner was convicted of multiple crimes in Arizona. (*See* Doc. 20-1 at 3–4 (detailing criminal history spanning 2013 to 2025).)  After his most recent arrest for violating a domestic violence court order, Petitioner was taken into ICE custody upon his release from jail.  (Doc. 20 at 2.)  On November 25, 2025, Petitioner was issued a Notice to Appear that initiated removal proceedings against him.  (Doc. 20-2 at 1.)  On February 24, 2026, the immigration judge issued a final removal order.  (*See* Doc. 20-3 at 1–6.)  The immigration judge ordered Petitioner removed to Iraq but granted him deferral of removal[1] to Iraq under the Convention Against Torture ("CAT").  (*Id.* at 3–5.)  Petitioner remains detained, and represents in his sworn declaration that "[t]he ICE officers [he has] talked to have told [him] that they are not trying to deport [him] to a third country." (Doc. 19-1 [Decl. of Waad Salam Alkhafaji] ¶ 4.)

**B.    Procedural History**

Petitioner, then proceeding *pro se*, filed a petition for writ of habeas corpus on April 9, 2026.  (Doc. 1.)  The Court denied the petition, finding that Petitioner was mandatorily detained under 8 U.S.C. § 1231(a) until May 24, 2026.  (Doc. 7 at 3.)  On May 26, 2026, Petitioner filed an amended petition.  (Doc. 11.)  The Court referred the amended petition to Federal Defenders of San Diego, Inc. ("FDSDI"), who filed a second amended petition on June 5, 2026.  (Doc. 14.)  After Respondents missed their deadline to respond, the Court issued a further Order to Show Cause (Doc. 17), which prompted FDSDI to realize that the second amended petition concerned a different petitioner (*see* Doc. 18). The Parties worked together to correct both mistakes, and the operative Third Amended Petition (Doc. 19) was fully briefed (*see* Docs. 20, 21) on June 22, 2026.  The Court appreciates the Parties' cooperation and timeliness in ensuring an accurate record.

---

[1]  Deferral of removal under CAT is a limited form of relief afforded only to noncitizens who are barred from receiving withholding of removal.  8 C.F.R. § 1208.17(a).  Deferral bars a noncitizen's removal to a particular country but allows, among other options, removal to another country where there is no likelihood of torture.  *Id.* § 1208.17(b)(2).

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   DISCUSSION

Petitioner argues that his detention violates 8 U.S.C. § 1231 and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 19 at 3–6; Doc. 21 at 2–4.) Respondents argue that Petitioner has not met his burdens to (1) rebut the six-month presumptively reasonable period of detention or (2) show that there is no significant likelihood of removal in the reasonably foreseeable future. (Doc. 20 at 3–6.)[2]

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). Under this statute, a noncitizen ordered removed must be detained for 90 days pending the government's efforts to secure the noncitizen's removal through negotiations with foreign

---

[2] Respondents also argue that the Petition is precluded by 8 U.S.C. §1252(g) to the extent Petitioner "is challenging ICE's decision to detain him for the purpose of removal." (Doc. 20 at 6.) Courts in this District, including this Court, have frequently rejected Respondents' argument. *See, e.g.*, *Huan v. Noem*, Case No.: 26-CV-512 JLS (DEB), 2026 WL 412609, at (1) (S.D. Cal. Feb. 13, 2026) ("for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court") (citing *Nadarajah v. Gonzalez*, 443 F.3d 1069, 1076 (9th Cir. 2006)).

governments.  *See* 8 U.S.C. § 1231(a)(2).  Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days."  *Zadvydas*, 533 U.S. at 682.  The statute, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention."  *Id.* at 689.  A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention."  *Id.* at 701.  The Court finds that Petitioner has rebutted the presumption of reasonableness and demonstrated that his removal is not significantly likely in the reasonably foreseeable future.

## A.  Rebuttable Presumption

Respondents argue that Petitioner's detention still falls "well within the six months of post-removal confinement that *Zadvydas* found to be presumptively reasonable." (Doc. 20 at 5.)  Petitioner argues that he may challenge his continued detention as unconstitutional because the 90-day statutory removal period has expired and circumstances here justify rebutting the presumption of reasonableness.  (Doc. 19 at 3–6.)

In *Zadvydas*, the Supreme Court recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final.  533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  The Supreme Court later clarified its holding in *Zadvydas* and explained that:

> *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal*. . . .  If [it] were, as the Government seems to believe, free to 'interpret' statutes as becoming inoperative when they 'approach constitutional limits,' [the Supreme Court] would be able to spare [itself] the necessity of ever finding a statute unconstitutional as applied.

*Clark v. Martinez*, 543 U.S. 371, 384 (2005) (emphasis added).

4

Multiple district courts have found that the six-month presumption is rebuttable. *See Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months.") (quoting *Zadvydas*, 533 U.S. at 700–01); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Huan*, 2026 WL 412609, at *2 (collecting cases); *Clark*, 543 U.S. at 387 (O'Connor, J., concurring) ("[T]he 6-month presumption . . . in *Zadvydas* . . . , is just that—a presumption."). Under Respondents' proposed interpretation of this regulation, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, Civil Action No. 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025). The Court agrees with these courts' reasoning and finds that the six–month presumption in *Zadvydas* is rebuttable.

The Court also finds that Petitioner has rebutted the six-month presumption. He argues that he was granted deferral of removal under CAT and thus cannot be removed to Iraq, the only country designated in his final order of removal. (Doc. 19 at 4.) "This presents a legal impediment to Petitioner's eventual removal because he may not be removed to [Iraq] . . . as long as the deferral of removal remains in effect." *Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1160–61 (S.D. Cal. 2026) (citing data regarding the rarity of removal of immigration detainees who have been granted CAT relief to alternative countries). Petitioner also cites news articles, data regarding the operation of non-military flights, and other habeas petitions granting similar relief for the proposition that the Government has been unable to remove people to countries such as Iraq, Iran, and Afghanistan. (*Id.* at 4–6.) Additionally, it has been over four months since Petitioner was granted deferral of removal to Iraq, and ICE has not been able to find an alternative country that will accept him. *See Mahdavian v. Larose*, Case No.: 3:26-cv-01489-RBM-MMP, 2026 WL 1683507, at *3 (S.D. Cal. June 10, 2026) (rebutting presumption of

3:26-cv-02262-RBM-BJW

reasonableness under similar circumstances); *Huan*, 2026 WL 412609, at \*2 (same).

**B.    Significant Likelihood of Removal**

Having found that Petitioner has rebutted the six-month presumption, the Court turns to the *Zadvydas* analysis: a petitioner is entitled to release if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and the government is unable to rebut that showing. *Zadvydas*, 533 U.S. at 701. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. For the reasons above, the Court finds that Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* Respondents have not.

Respondents note that "[a]part from Iraq, there appears to be no other country that would meet [the requirements of 8 U.S.C. § 1231(b)(2)(E)]." (Doc. 20 at 4.) Therefore, Respondents argue, "ICE may remove Petitioner to a third country that will accept Petitioner's removal." (*Id.*) However, "ICE has not yet identified a third country for Petitioner's removal." (*Id.* at 5.) Respondents state only that "ICE is working diligently to effect Petitioner's removal," and that "it would be premature to [find no significant likelihood of removal] before permitting ICE an opportunity to complete its diligent efforts to effect removal." (*Id.*)

"Because Respondents have 'offered little more than generalizations regarding the likelihood that removal will occur,' the Court finds that they have not met their burden to respond with evidence sufficient to rebut Petitioner's showing." *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at \*3 (S.D. Cal. Dec. 10, 2025) (quoting *Kamyab v. Bondi*, Case No. C25-389 RSL, 2025 WL 2917522 (W.D. Wash. Oct. 14, 2025)). *Kamyab* is instructive. There, the petitioner was born in Iran and ordered removed after sustaining a criminal conviction. *Id.* at \*1. Because the travel document request to Iran had been pending for over six months "and could remain pending for quite some time," the Government also submitted "third-country removal requests to Costa Rica, Panama,

and El Salvador." *Id.* at 3. Several months later, those requests to the third countries were still unanswered. *Id.* In granting the petition for writ of habeas corpus, the court reasoned:

> At most, the Government's arguments and declarations here show there is at least some possibility that [the target country] will accept [the petitioner] at some point. . . . That is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future. . . . Courts in this circuit have regularly refused to find [the Government's] burden met where [the Government has] offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzalez*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Chun Yat Ma v. Asher*, [No. C11-1797 MJP], 2012 WL 1432229, at *4–5 [(W.D. Wash. Apr. 25, 2012)].
>
> For example, in *Singh v. Gonzalez*, the court found that ICE had not met its burden where it 'merely assert[ed] that it has followed up on its request for travel documents' but could not provide any substantive indication regarding how or when it expect[ed] to obtain the necessary travel document . . . .' 448 F. Supp. 2d at 1220. And in *Chun Yat Ma v. Asher*, the court considered an affidavit from an ICE official that included a statement that an individual's travel document would 'likely' be issued soon. 2012 WL 1432229, at *4. Yet, the court noted, a deportation officer could not give any 'indication of when the issuance may occur.'

*Kamyab*, 2025 WL 2917522, at *4.

In addition, courts have held that the government failed to meet its burden on facts even more favorable to them than those present here. For example, in *Phan v. Warden of Otay Mesa Detention Facility*, the government argued that it had rebutted the petitioner's showing because it had prepared a travel document request, translated it completely, and submitted it to ICE headquarters. 813 F. Supp. 3d 1179, 1186–87 (S.D. Cal. 2025). But the court found the government failed to "proffer a substantive rebuttal" because the government "concede[d] that the travel document request ha[d] yet to be submitted to Vietnam, provide[d] no estimate for when it [would] be submitted, and provide[d] no estimate for how long it [would] take for Vietnam to respond." *Id.*; *see also Lopez-Cacerez v. McAleenan*, Case No. 19-cv-1952-AJB-AGS, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (holding that "[g]eneral indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions

will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful") (citation omitted); *Gilali v. Warden of McHenry Cnty. Jail*, Case No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status, [] this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future.").

Here, Respondents' evidentiary showing is even weaker than in *Kamyab* or *Phan*. Respondents have not identified a third country to which they plan to remove Petitioner, much less submitted a travel document or provided an estimate for how long it would take this third country to respond. *See Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822, at *3 (S.D. Cal. Oct. 6, 2025) ("[T]he Government's minimal work on this case—one resettlement request and two follow up emails over the course of seven months—do not instill confidence that it will be able to secure [the] [p]etitioner's removal in the reasonably foreseeable future."). Even if ICE were to identify a third country, Petitioner's removal to that country would still require the affirmative assent of the receiving country. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). And even then, Petitioner's removal would be unlikely in the "reasonably foreseeable future" because he would be "entitled to raise a fear-based challenge to his removal to any other country than [Iraq], resulting in potentially additional, lengthy proceedings." *Ndandu*, 819 F. Supp. 3d at 1162 (cleaned up) (citing *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025). This is particularly true in light of Petitioner's grant of CAT deferral of removal. *See* 8 C.F.R. § 1208.17(b)(2) (providing that an immigration officer must inform the noncitizen that he "may be removed at any time to another country where he or she is not likely to be tortured."); 8 U.S.C. § 1231(b)(3) ("[T]he Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion"). While such proceedings

8

may only delay removal, "[t]he fact that [Petitioner] likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future." *Zavvar*, 2025 WL 2592543, at *8.

Accordingly, Petitioner has sufficiently established that his removal is not significantly likely in the reasonably foreseeable future. Petitioner's detention is therefore no longer reasonable or authorized by statute.

### IV.    CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 19) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to "appropriate conditions" of supervision to be determined by immigration authorities and in accordance with all applicable statutory and regulatory procedures.[3]

2. The Motion to Appoint Counsel (Doc. 15) and Motion for Leave to Proceed In Forma Pauperis (Doc. 16) are **DENIED as moot**.

**IT IS SO ORDERED**.

DATE:  June 29, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3]  *See Vlasov v. Bondi*, Case No.: 25-cv-1342-AJB-MSB, 2025 WL 2258582, at *3 (S.D. Cal. Aug. 7, 2025); *Daneshfar v. Facility Admin.*, CASE NO. 2:25-cv-01708-DGE-MLP, 2026 WL 71405, at *1 (W.D. Wash. Jan. 9, 2026) (citing 8 C.F.R. §§ 241.13(h)(1)–(3)).

3:26-cv-02262-RBM-BJW